UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| NATASSIA STOKES o/b/o J.L.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:17 CV 93 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Natassia Stokes brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application on behalf of her minor son, J.L.S. ("Plaintiff"), for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff's attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD") were severe but did not meet or medically equal an impairment contained in a listing pursuant to 20 C.F.R. § 416.926a. Consequently, the ALJ found that Plaintiff was not disabled.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I. Procedural History

Ms. Brown protectively filed an application for Child's SSI on behalf of Plaintiff on December 10, 2013. (Tr. 238-43.) She stated that Plaintiff was born in 2009, and alleged that he became disabled beginning May 1, 2012, due to ADHD, obsessive compulsive disorder ("OCD") "odd and violent behavior," and seizures. (Tr. 256.) Plaintiff's claim was denied initially. (Tr. 128-31.) Following an administrative hearing, Plaintiff's claim was denied in a written opinion by an ALJ, dated November 10, 2015. (Tr. 102-22.) On September 13, 2016, after receiving additional evidence, the Appeals Council remanded the matter back to the ALJ for further development and a new decision. (Tr. 123-27.) On July 20, 2017, following a second hearing, the ALJ found that Plaintiff was not under a disability as defined in the Act. (Tr. 17-37.) Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on November 7, 2017. (Tr. 1-6.) Thus, the July 20, 2017 decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Plaintiff claims that the ALJ erred by improperly "fail[ing] to rely on the treating physician's opinion regarding functional equivalence." (Doc. 26 at 9.)

## II. The ALJ's Determination

The ALJ stated that Plaintiff was born on November 22, 2009, and was a preschooler on the date his application was filed, and is currently a school-age child. (Tr. 23.) Plaintiff has not engaged in substantial gainful activity since January 3, 2014, the application date. *Id.* The ALJ found that Plaintiff has the following severe impairments: ADHD and ODD. *Id.* The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926). *Id.*

The ALJ further found that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings. (Tr. 24.) Specifically, the ALJ found that Plaintiff has the following limitations: less than marked limitation in his ability to acquire and use information; marked limitation in his ability to attend and complete tasks; less than marked limitation in his ability to interact and relate with others; no limitation in his ability to move about and manipulate objects; less than marked limitation in his ability to care for himself; and no limitation in his health or physical well-being. (Tr. 31-37.) Finally, the ALJ concluded that Plaintiff has not been disabled, as defined in the Social Security Act, since January 3, 2014, the date the application was filed. *Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment(s) is severe, the Commissioner must determine whether it meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. *Garrett*, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's

impairment to determine whether the impairment functionally equals the listings. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).

To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation in one domain of functioning or "marked" limitations in two domains. 20 C.F.R. § 416.926a(a). The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains used by the Commissioner in making this determination are: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being. *Id.*

A child-claimant has a "marked" limitation in a domain when his impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities. [His] day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a child-claimant's functioning may be marked or extreme, the Commissioner is to review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how appropriately, effectively and

independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Young v. Shalala*, 52 F.3d 200 (8th Cir. 1995) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). In evaluating the substantiality of the evidence, the Court must consider evidence which supports the Commissioner's decision as well as any evidence which fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Where substantial evidence supports the Commissioner's decision, the Court must affirm, even if a different conclusion may be drawn from the evidence. *Id.*

## IV.  Discussion

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of treating physician, Dr. Imam, when determining functional equivalence.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion

entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Dr. Imam completed two Childhood Disability Evaluation forms. On November 18, 2015, Dr. Imam indicated Plaintiff had ADHD and disruptive mood disorder. (Tr. 432.) He expressed the opinion that Plaintiff functionally equals the listings. *Id.* With regard to the domains, he found that Plaintiff had extreme limitation in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself; and marked limitation in the domains of Moving About and Manipulating Objects and Health and Physical Well-Being. (Tr. 434-35.) On February 7, 2017, Dr. Imam completed a second form, in which he found Plaintiff had extreme limitation in the domains of Attending and Completing Tasks and Interacting and Relating with Others; marked limitation in the domains of Acquiring and Using Information and Caring for Yourself; and less than marked limitation in the domains of Moving About and Manipulating Objects and Health and Physical Well-Being. (Tr. 518-19.)

The ALJ indicated that he was assigning "little weight" to Dr. Imam's opinions. (Tr. 30.) The ALJ explained that Dr. Imam's opinions were inconsistent with Plaintiff's "academic performance, the lack of need for any special supports in his academic setting, [and] his daily activities." *Id.* He further found that Dr. Imam's opinions were inconsistent with psychiatric evaluations in the record, "which, while suggestive of distractibility and concentration problems, do not suggest interpersonal, cognitive, adaptive or other deficits to the extreme levels suggested by Dr. Imam." *Id.*

Plaintiff only challenges the ALJ's finding that Plaintiff had less than marked limitation in the domain of Interacting and Relating with Others. For this domain, the Commissioner is to consider how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i).

The Regulations provide that pre-school aged children (age 3 to attainment of age 6) should be able to socialize with children as well as adults, begin to prefer playmates one's own age and start to develop friendships with children the same age, use words instead of actions to express oneself, and be better able to share and show affection. 20 C.F.R. § 416.926a(i)(2)(iii). School-age children should be able to:

> develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

*Id.* at § 416.926a(i)(2)(iv).

Examples of limited functioning in this domain include: having no close friends or only friends that are older or younger, avoiding or withdrawing from known people or being overly

anxious or fearful of meeting new people, having difficulty playing games or sports with rules difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency. *Id.* at § 416.926a(i)(3).

At the administrative hearing, Plaintiff's mother testified that Plaintiff was aggressive, especially toward his sister. She stated that Plaintiff had kicked his pregnant babysitter in the stomach on one occasion, which led to Plaintiff's psychiatric hospitalization for several days in November 2015. (Tr. 26, 48, 426.) Plaintiff's mother testified that Plaintiff was not aggressive toward children at school. *Id.*

The ALJ acknowledged that Plaintiff has been diagnosed with oppositional defiant disorder, and that the record reveals persistent issues with aggression, self-injurious behavior, and violence toward others. (Tr. 34.) The ALJ stated that Plaintiff's academic records, however, "suggest far less behavioral problems in the school setting." (Tr. 34.)

The undersigned finds that the ALJ provided sufficient reasons for discrediting Dr. Imam's opinions. First, the ALJ accurately noted that Dr. Imam's opinions were inconsistent with Plaintiff's academic performance.

On March 18, 2014, Plaintiff's Headstart Teacher, Leah Yordt, completed a Teacher Questionnaire. (Tr. 266-73.) In the domain of Acquiring and Using Information, Ms. Yordt found that Plaintiff had a "serious problem" in his ability to understand and participate in class discussions, and express ideas in written form; and an "obvious problem" in his ability to comprehend and/or follow oral instructions, and read and comprehend written letters. (Tr. 267.) In Attending and Completing Tasks, she found Plaintiff had a serious problem in his ability to wait to take turns; and an obvious problem in his ability to focus long enough to finish an assigned task. (Tr. 268.) As to the Interacting and Relating with Others domain, Ms. Yordt indicated Plaintiff

had a serious problem in his ability to follow rules, take turns in a conversation, and interpret the meaning of facial expressions, body language hints, and sarcasm. (Tr. 269.) He had an obvious problem in his ability to respect and obey adults in authority, use language appropriate to the situation and listener, and introduce and maintain relevant and appropriate topics of conversation. *Id.* In the domain of Caring for Himself, she found Plaintiff had a serious problem in his ability to be patient when necessary and use good judgment regarding personal safety and dangerous circumstances; and an obvious problem in his ability to handle frustration appropriately and use appropriate coping skills to meet daily demands of school environment. (Tr. 271.) Ms. Yordt indicated that it had not been necessary to implement behavior modification strategies for Plaintiff. (Tr. 269.) She remarked that Plaintiff was "very independent but sometimes that means he is unsafe. Also when working on his own he gets side tracked." *Id.*

The ALJ assigned "great weight" to Ms. Yordt's opinion, as Ms. Yordt had been able to observe Plaintiff on a daily basis for a long period and was therefore "well-suited to offer insight into his functional abilities and limitations." (Tr. 29.) The ALJ also noted that Ms. Yordt's findings were consistent with psychiatric evaluations and mental health treatment notes in the record. *Id.*

The ALJ next discussed the September 2016 opinion of Plaintiff's first grade teacher, Beth Cobb. (Tr. 29.) Ms. Cobb indicated that Plaintiff was taking regular classes, as he did not qualify for special services. (Tr. 510.) Plaintiff was "somewhat below grade" in Math, Language Arts, and Reading. *Id.* Ms. Cobb indicated that Plaintiff was working, behaving, and learning "about average," and was "slightly more" happy than average. (Tr. 511.) She had "no concerns" about Plaintiff and described him as "very friendly and well mannered." *Id.* On a list of 112 possible issues, Ms. Cobb identified the following: Plaintiff was "somewhat" unable to sit

still, restless, or hyperactive; somewhat impulsive or acted without thinking; and sometimes slept in class. (Tr. 512-13.) On a separate list of 35 possible symptoms, Ms. Cobb indicated that Plaintiff "occasionally" exhibited the following symptoms: fails to give attention to details or makes careless mistakes in schoolwork, has difficulty sustaining attention to tasks or activities, does not seem to listen when spoken to directly, and is easily distracted by extraneous stimuli. (Tr. 514-15.) As to Plaintiff's academic performance, Ms. Cobb found that Plaintiff's performance in Reading, Mathematics, and Written Expression were "somewhat of a problem." (Tr. 515.) She expressed the opinion that Plaintiff's behavioral performance was "average" in all areas, including relationships with peers, following directions, and disrupting class. *Id.*

The ALJ assigned "great weight" to Ms. Cobb's opinions, finding they were consistent with Plaintiff's attention difficulties, distractibility, and interpersonal issues; although noting Ms. Cobb "appears to have underestimated difficulties pertaining to his aggression and oppositional behavior." (Tr. 29.)

Ms. Cobb completed a "Teacher Questionnaire" on January 5, 2017, at which time she indicated she had known Plaintiff for five months. (Tr. 311.) Plaintiff was still in first grade, and Ms. Cobb rated his reading level as "average," and his math level as "low." *Id.* In the domain of Acquiring and Using Information, Ms. Cobb found that Plaintiff had a "serious problem" in the areas of reading and comprehending written material and expressing ideas in written form; and an "obvious problem" in the areas of comprehending and doing math problems, understanding and participating in class discussions, learning new material, and applying problem solving skills in class discussions. (Tr. 312.) Ms. Cobb remarked that Plaintiff was "a very attentive student." *Id.* He was "eager to learn and is very compliant in class." *Id.* (emphasis in original). Plaintiff's written expression was limited. *Id.* As to the domain of Attending and

Completing Tasks, Ms. Cobb found that Plaintiff had a "serious problem" in his ability to organize his own things or school materials, and work at a reasonable pace or finish on time; and an "obvious problem" in his ability to focus long enough to finish assigned activities or tasks, refocus on tasks when necessary, carry out multi-step instructions, complete class/homework assignments, complete work accurately without careless mistakes, and work without distracting himself or others. (Tr. 313.) Ms. Cobb commented that Plaintiff has trouble focusing and staying on task "usually by late afternoon," and especially has difficulty attending to tasks during writing workshop at the end of the day. *Id.* In the domain of Interacting and Relating With Others, Ms. Cobb found Plaintiff only had "a slight problem," in the area of "seeking attention appropriately," which occurred approximately monthly. (Tr. 314.) She indicated that it had not been necessary to implement any behavior modification strategies. *Id.* Ms. Cobb found that Plaintiff had no problems in the domains of Moving About and Manipulating Objects and Caring for Himself. (Tr. 315-16.) She noted that Plaintiff had recently started wearing glasses and was "very responsible" with his glasses. (Tr. 317.) Finally, Ms. Cobb stated that Plaintiff remembers to see the nurse for his medication on a daily basis, and that the medication "is effective and helps [Plaintiff] attend to his classroom tasks." *Id.*

The ALJ assigned "great weight" to Ms. Cobb's assessment. (Tr. 30.) He stated that Ms. Cobb is "well-suited to offer an opinion regarding the claimant's functional status," and her findings are consistent with "objective findings in the record, as well as with psychiatric evaluations and mental health treatment notes." *Id.*

The school records also reveal a preschool teacher described Plaintiff as a "happy, friendly student [who] plays well with his classmates" on a first quarter report for the 2014-2015 school year. (Tr. 303.) The only disciplinary action in Plaintiff's educational records occurred on

November 30, 2016, when Plaintiff was observed climbing in the sink of the restroom as if he were going to do a flip off the sink. (Tr. 321.) Plaintiff had a conference with the principal and lost his recess as a result. *Id.*

In determining a child's functioning in a domain, parents and teachers, as well as medical providers, are important sources of information. 42 U.S.C. § 416.924a; *Richardson ex rel. Richardson v. Massanari*, No. C00–2083 MJM, 2001 WL 34152093, *10 (N.D. Iowa Sept. 27, 2001) (explaining that under the regulations, "the observations and opinions of a child's teachers are particularly informative at [the functional equivalence] step due to the teachers' regular, ongoing interaction with, and observation of, the child over a sustained period of time");*cf.*, *Spencer v. Barnhart*, No. 4:05CV0408TCM, 2006 WL 568569, at *9 (E.D. Mo. Mar. 7, 2006) (holding that the ALJ erred in giving significant weight to the plaintiff's teacher, who had taught the plaintiff for less than two months before completing the Teacher Questionnaire).

The ALJ's finding of less than marked limitation in Interacting and Relating with Others is supported not only by the school record, but also the medical evidence of record. Dr. Imam's own treatment notes reveal consistent findings of severe hyperactivity, impulsivity, and distractibility on examination, but do not note similar findings of aggression or violence to support the presence of an extreme limitation in Interacting and Relating with Others. (Tr. 358-425, 472-509.)

As to the other opinion evidence, Plaintiff saw David Peaco, Ph.D., for a psychological evaluation at the request of the State agency, on November 3, 2016. (Tr. 467-69.) Upon examination, Plaintiff had an exceptionally high level of motor activity, and was able to remain seated for about thirty seconds. (Tr. 467.) He made frequent eye contact and often initiated conversations, spoke at a rapid pace, and his speech articulation was normal for his age. (Tr. 468.) Plaintiff cooperated during the evaluation and answered all the questions that were asked of

him.  *Id.*  His flow of thinking was extremely unfocused.  *Id.*  Dr. Peaco noted that Plaintiff was very outgoing and very social, and "seems to enjoy the stimulation of spending time with other children."  (Tr. 469.)  Plaintiff's mother reported that he had experienced a few conflicts with other children, but she believed that "because these are so rare, that both the other child and [Plaintiff] may have been at fault."  *Id.*  Dr. Peaco found that Plaintiff's concentration and persistence in completing tasks was markedly impaired; his social functioning was "unimpaired;" and his capacity to cope with and adapt to the world around him was moderately impaired due to inattentiveness, hyperactivity, and "some very physically intense disruptive behaviors."  *Id.*

The ALJ assigned "partial weight" to Dr. Peaco's opinions, in that he agreed Plaintiff's ADHD symptoms resulted in marked difficulty in attending and completing tasks.  (Tr. 30.)  The ALJ explained that Dr. Peaco's finding of unimpaired social functioning gave insufficient consideration to Plaintiff's oppositional and aggressive behavior.  *Id.*

The other medical evidence also supports the ALJ's determination.  Plaintiff's mother requested a consultation regarding possible autism spectrum disorder ("ASD") at Mercy Kids in March 2016 due to Plaintiff's temper tantrums, anger outbursts (primarily at home), and oppositional/defiant behaviors.  (Tr. 438.)  It was found that Plaintiff did not exhibit symptoms consistent with a diagnosis of ASD, such as significant deficits in social emotional reciprocity or the use of nonverbal communication behavior.  *Id.*

Plaintiff underwent another psychological evaluation to explore a diagnosis of ASD on September 12, 2016, at the University of Missouri.  (Tr. 451.)  Plaintiff's "predominant mood" was identified as "happy go lucky."  *Id.*  His social interactions at school "go well," and he was described as "outgoing and gets along with peers."  (Tr. 453.)  Plaintiff did not meet the criteria for ASD.  (Tr. 456.)  The examining psychologist noted that Plaintiff demonstrated "a number of

strong social communication skills." *Id.* The examiner stated that, although Plaintiff's mother reported tantrums and aggression toward others,

> In contrast, [Plaintiff]'s teacher …did not endorse any clinically significant concerns in any domain. More specifically, the teacher did not have any concerns about [Plaintiff] and indicated that he was "very friendly and well mannered." Given that [Plaintiff]'s difficulties manifest primarily in the home a diagnosis of Oppositional Defiant Disorder, Mild, is applied. [Plaintiff] and his caregivers would benefit from engaging in intensive behavior therapy with the goal to modify caregiver responses to [Plaintiff]'s challenging behaviors.

(Tr. 455.)

Finally, two State agency medical consultants—Aine Kresheck, Ph.D. and Despine Coulis, M.D.—completed a Childhood Disability Evaluation form in April 2014. (Tr. 28, 97.) Drs. Kresheck and Coulis expressed the opinion that Plaintiff had less than marked limitations in the domain of Interacting and Relating with Others. *Id.* The ALJ expressed agreement with this finding, "in light of the claimant's behavioral problems and difficulty getting along with his sister, in the context of his generally appropriate interactions in a school setting." (Tr. 28.)

In sum, the ALJ properly weighed the medical opinion evidence and found that Dr. Amam's opinion of extreme limitations in the domain of Interacting and Relating with Others domain was not supported by the record. As stated by the ALJ, Plaintiff's academic records suggest far less behavioral problems in the school setting than those reported by Plaintiff's mother. In her most recent assessment, Ms. Cobb described Plaintiff as "very compliant," and indicated that it had not been necessary to implement any behavior modification strategies. *Id.* Even Plaintiff's mother admitted that Plaintiff did not have difficulties with other children at school. (Tr. 48.) Although the record shows Plaintiff to experience some limitations in this domain in that Plaintiff is irritable and violent toward his sister at home, there nevertheless is substantial evidence on the record as a whole to support the ALJ's conclusion that such difficulties do not rise

to a level to be considered "marked" limitations under the Regulations.  *See Neal ex rel. Walker v. Barnhart,* 405 F.3d 685, 688 (8th Cir. 2005).

The medical and school records reveal Plaintiff has significant problems with focus and hyperactivity resulting from his ADHD, which the ALJ acknowledged in finding marked limitation in the domain of Attending and Completing Tasks.   Because Plaintiff does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, substantial evidence supports the ALJ's decision finding Plaintiff not disabled.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

                                              /s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of March, 2019.